Cheshire,  
June 26, 1924.

### KEENE v. ROXBURY.

Laws 1911, c. 40, exempting property owned by one municipality for the purpose of a water supply but located within another, is constitutional.

Towns as such have no constitutional rights in matters of taxation; the legislature may grant exemptions from taxation by a town either in express terms or by omitting certain property from the catalogue of taxable estate.

The assessment provided for by Laws 1911, c. 40, is not a tax in the sense that it cannot be laid otherwise than in accordance with the constitutional principle of equality as respects other taxpayers of the servient municipality but may be viewed either as the condition annexed to the grant of a municipal franchise to hold real estate in another municipality or as a legislative apportionment of the public burden between municipalities.

The ascertainment of the validity of the assignment of the public burden of taxation and the determination of the individual taxpayer's share therein are judicial proceedings; the making of such assignment is a legislative function.

Legislative provisions defining the taxing group or district and prescribing the purposes for which such district shall tax itself or be taxed are subject to the constitutional principle of equality in so far as to exclude taxation of one district for the benefit of another; but, the benefit being conceded, the burden is not unconstitutional unless so unreasonable as to clearly appear an unfair return for the benefit received.

The charge laid under Laws 1911, c. 40, is not a tax levied in the servient district but an expense to be met by taxation in the dominant district as the result of an apportionment of a public duty and is valid if the charge works substantial justice.

Property to be exempt from taxation under Laws 1911, c. 40, must be held for the purpose of a water supply and it must yield no rent or "revenue in the nature of rent"; water rates collected in the dominant district, charges for water in the servient district and the purchase price of timber sold are neither rent nor "revenue in the nature of rent." Growing timber which is not held to conserve the water supply but for its value to grow and sell is not exempt.

The mere fact of municipal ownership does not exempt land in another town from taxation; unless held for a public use such land is taxable.

PETITIONS, for the abatement of taxes, assessed in the years 1918 to 1923 inclusive. Keene takes its water supply largely from Echo lake and Roaring brook in Roxbury, and to protect the same has from time to time purchased a substantial acreage in the drainage area. Some of the holdings are in part outside this area. In 1922 Keene sold the standing timber upon 400 acres, some of which is within the watershed. It has at other times cut growth on other parts of its holdings, and has planted or seeded to pine some parts of the drainage area. The city collects pay for water furnished

consumers in Keene, and has also done so in Roxbury. It purchased some of the land before it was given special authority to do so, but it had full authority to hold land in Roxbury before 1918.

Upon a master's report of the facts, the defendant requested certain rulings calculated to present questions of the constitutionality of Laws 1911, c. 40, and also of its interpretation if constitutional. The requests to rule that the act is unconstitutional were denied, subject to exception, and the others were transferred without ruling by *Allen,* J.

*Arthur Olson, Roy M. Pickard* and *William H. Watson (Mr. Pickard* orally), for the plaintiff.

*Chester B. Jordan,* by brief and orally, for the defendant.

PEASLEE, J.   "Property held by a city, town or precinct in another city or town for the purpose of a water supply, if yielding no rent, shall not be liable to taxation therein, but the city, town or precinct so holding it shall annually pay to the city or town in which such property lies an amount equal to that which such place would receive for taxes upon the average of the assessed value of such land without buildings or other structures for the three years last preceding the acquisition thereof, the valuation for each year being reduced by all abatements thereon; but any part of such land or buildings from which any revenue in the nature of rent is received shall be subject to taxation." Laws 1911, c. 40.

The defendant contends that this statute is unconstitutional. Conceding that the legislature has power to grant exemptions from taxation, it is urged that the exemption here provided for is so connected with and dependent upon the imposition of an unauthorized tax that the whole statute is void, and the property is taxable under the rule laid down in *Newport* v. *Unity,* 68 N. H. 587. Many of the questions involved here received exhaustive consideration in *Canaan* v. *District,* 74 N. H. 517. In that litigation all the justices sitting in the case concurred in the conclusion reached, but for different reasons and upon divergent grounds. There was not a majority for any view of the law, so far as the questions now in issue were concerned. It follows that the opinions rendered in that case do not have the authority of precedents.

Upon a reconsideration of the subject, it seems to us that the views then expressed by the chief justice embody a correct statement

of the law. The subject was considered in great detail, and it is superfluous to restate the argument here. It is sufficient to call attention to the following propositions. Towns as such have no constitutional rights in matters of taxation. No tax can be laid except by authority of the legislature; and the legislature may grant exemptions, either in express terms or by omitting certain property from the catalogue of taxable estate. It follows that the act in question violates no constitutional right of Roxbury, since it has no such right. *Canaan* v. *District, supra,* 517, 535–537.

It was urged at the argument that the principle relied upon applies as between superior and inferior governmental agencies, but not as between two of equal rank. A case involving taxation of property in one state, held for public uses in another state, is cited to sustain the contention. *State* v. *Holcomb,* 85 Kan. 178. That case presents no parallel to this. It was a controversy between two sovereignties, concerning attempted acts of one within the territory of the other. But the present litigation concerns two subordinate governmental agencies, and their *status* as fixed by the common creator of both. It is not the case of attempted acts of one town against another, but of the regulation of the affairs of both by the power which created both and could abolish or modify both or either at its will. *Berlin* v. *Gorham,* 34 N. H. 266, 275; *Farnum's Petition,* 51 N. H. 376; *East Kingston* v. *Towle,* 48 N. H. 57.

It is further contended that the assessment provided for violates the rights of other taxpayers in Roxbury. Conceding for the purpose of the argument that this objection is open to the defendant, the question of the nature of this charge against towns and cities is presented. The argument for the defendant is based upon the contentions that the charge upon Keene is a tax upon its property in Roxbury, and as it is not laid upon the value of the property on the taxing date it is unequal and therefore unauthorized. The claim that the charge is a Roxbury tax, and comes within the constitutional restriction, is based upon the theory that it could not be laid other than as such tax. There are two sufficient answers to this position. The grantor of a privilege may annex conditions to its acceptance, and the legislature may provide that one division of the state shall contribute to the expenses of another division, when such expense is in some degree for the benefit of the former.

Holding real estate in another town for water works purposes is not a matter of municipal right. It may be granted or withheld as the legislature sees fit. The list of acts cited in *Canaan* v. *District,*

74 N. H. 517, 533 and 535, *note*, shows the frequent exercise of this power. Such use of property is a public one. Its enjoyment is a kind of franchise, and it is familiar law that a grant of such power may be upon such terms and conditions as the granting authority sees fit to impose. *State* v. *Railroad*, 75 N. H. 327, and cases cited.

This is what was done in the present instance. The property was exempted from taxation, and the right to hold and use it for the specified purpose was made subject to certain contributions to the town where the property was situated. As the legislature could have withheld the grant of the right, it could impose terms when conferring it. The burden imposed might have been made twice or half that of a taxpayer, or it might have been fixed without any reference to the subject of taxation.

Taking this statute as a whole the legislative purpose is not doubtful. The law was enacted shortly after the decision of *Canaan* v. *District*, *supra*, and quite evidently with the views there expressed clearly in mind. The act is a copy of Massachusetts Laws, 1893, *c.* 352, *s.* 1, and the court had there held (1906) that the charge was not a tax. *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491. The intent to impose a duty to pay which was distinct from a taxpayer's obligation is apparent. No right of taxpayers in Roxbury is violated by such a provision.

The charge laid is also sustainable under the power to determine the apportionment of public burdens between municipalities. That this power is not limited by municipal boundaries is shown by the statute requiring towns to contribute to the construction or maintenance of highways in other towns. P. S., *c.* 69, *s.* 11; *Webster* v. *Alton*, 29 N. H. 369. The cases involving other aspects of the exercise of this legislative function, and illustrating its broad scope, are fully reviewed in *Wooster* v. *Plymouth*, 62 N. H. 193. There are of course constitutional limits. The legislature cannot arbitrarily provide that taxpayers in one district shall contribute to the support of a public enterprise which is wholly for the benefit of another district. *Bowles* v. *Landaff*, 59 N. H. 164, 192; 1 Cool., Tax., *s.* 316. But when there are overlapping, common or intermingled rights or benefits, it is within the legislative power to make a reasonable division of the burden. *Londonderry* v. *Derry*, 8 N. H. 320. Such a division is not the exercise of that part of the power of taxation which is governed directly and immediately by the constitutional rule that each citizen shall be called upon to contribute his share. It is not a distribution of the common burden among the individual

taxpayers, but rather a determination of where, and in what degree, the common burden should rest in the aggregate. It is an exercise of the legislative authority "to distribute with greater equality and uniformity the public burdens." *Langley* v. *Barnstead*, 63 N. H. 246, 247; *Webster* v. *Alton*, 29 N. H. 369, 382.

In this case it appeared desirable to the legislature that towns and cities should be permitted to exercise certain functions upon territory not within their municipal boundaries. It was thought reasonable that property so held should be exempt from taxation, and it was so enacted. It also seemed just that the town or city so holding property should contribute to the municipal burdens of the servient town, from whose local government the contributor presumably receives some benefit. As against the plaintiff the statute is sustainable upon the ground of special benefit received, as well as upon the theory that it has accepted the grant of a power and must take it with the conditions imposed with the grant.

As against the taxpayers of Roxbury, the statute is valid, because it does not touch any right they possess. If there had been no provision for any payment by the plaintiff to the defendant, they would have had no ground for complaint. The property was exempt from taxation. The question what, if any, contribution Keene should make to Roxbury under the circumstances was not one involving the judicial ascertainment of each taxpayer's individual share, but of what was a just and equitable division of public expense as between certain bodies of taxpayers. It was for the legislature to decide. In fixing the division of the burden between the two groups, there is no constitutional provision requiring that it shall be so established that taxpayers in both groups shall pay an equal share in proportion to their taxable estate in their group. It is not required that they be treated as one group. From the nature of the question involved, any such limitation would often lead to an inequality greater than that sought to be rectified.

While the ascertainment of the validity of the assignment of the public burden, and the determination of the individual taxpayer's share therein, are judicial proceedings (*Boody* v. *Watson*, 64 N. H. 162, 175), the function of making such assignment is legislative. *Opinion of the Justices*, 231 Mass. 603. The principle here involved is that which authorizes the legislature to act in the matter of town property and liabilities, upon a division of the town. If it fails to act upon this subject, the division of the town is still valid, although taxpayers in one town may thereby be deprived of the

benefits incident to such an apportionment. *Tilton* v. *Sanbornton,* 55 N. H. 610, *note; Troy* v. *Haskell,* 33 N. H. 533. It is not a constitutional right of taxpayers in the new town that a division of the public property be made, nor of those of the old town that it be withheld. It is not the right of either that the division be made in any particular way. *Wooster* v. *Plymouth,* 62 N. H. 193, 216. The provision that the property of Sanbornton should be divided by giving eleven twentieths to Tilton and nine twentieths to Sanbornton, did not infringe any right of any taxpayer. 1 Cool., Tax., s. 96; 2 *Ib.,* s. 544.

The fact that in making the decision as to the division of burden in the present instance, the legislature adopted the current tax rate in Roxbury as one of the elements to be used in fixing the amount of the contribution, does not alter the nature of the charge imposed. As the defendant urged in argument, the question is not one of terminology, but of the substance of the enactment.

Legislative action looking to the ultimate imposition of a tax burden consists of several steps. The group which shall constitute the taxing district is to be determined. *Allen* v. *Bidwell,* 68 N. H. 245. Then follow provisions as to the purposes for which the group may or must tax itself, or be taxed. Finally, there is the distribution of the burden among the members of the group. The constitutional provisions protecting each individual against the imposition of more than his share have direct application to the latter step only. Their indirect application to legislative action defining the group and specifying the purposes for which taxes must be raised extends only so far as to exclude taxation of one group for the benefit of another. The benefit being conceded, the question as to the constitutionality of a legislative imposition of a burden, is whether it is so unreasonable as to necessarily result in inequality. It must clearly appear that it could not be considered a fair return for special benefits received. "It is the palpable perversion of the power to tax which justifies the judicial interference." 1 Cool., Tax., s. 324. The power to distribute the public burden, or the public revenue, like that to divide public property upon the division of a town, "is, in its nature, purely legislative. No general rule can be prescribed, by which an equal and just division, in such cases, can be made. Such a division must be founded upon the circumstances of each particular case." *Bristol* v. *New Chester,* 3 N. H. 524, 534; *Tilton* v. *Sanbornton,* 55 N. H. 610, *note; Troy* v. *Haskell,* 33 N. H. 533.

This question of equality is a practical one. As was said in the consideration of the constitutionality of the statute compelling towns to contribute to the construction or maintenance of highways in another town: "No doubt there may be individuals in every town concerning whom it would be difficult to discover wherein they are benefited by some roads made therein. Still it would be utterly impracticable to draw the line and say who should be taxed and who should not, for such purposes." *Webster* v. *Alton*, 29 N. H. 369, 382. "The framers of the constitution were practical men — not theorists. To them the document was a practical instrument. While prescribing an equal division of the expense of protection, they left the scheme by which such equal division should be worked out to the legislature." *Canaan* v. *District*, 74 N. H. 517, 538. In the performance of this duty, the legislature is not limited to the use of the rule of three.

The charge here laid upon Keene is not a tax in Roxbury, but an expense which must be met by taxation in Keene. It is the result of an apportionment of public duty, and is authorized so long as it "does substantial justice." *Gooch* v. *Exeter*, 70 N. H. 413, 416. The defendant's argument mistakes the significance of Keene's ownership of real estate in Roxbury. It assumes that since Keene is required to contribute to Roxbury because of such ownership, therefore the contribution must be, in form and in substance, a Roxbury tax upon the property so held. But as before pointed out, the imposition of the duty to contribute may be based upon a different theory. Keene's ownership is important here only as it is evidence tending to show a situation where Keene is benefited by Roxbury's performance of municipal duties.

The claim that if the act is sustained many kinds of unequal taxation will be permitted is based upon a misapprehension of the grounds upon which the validity of the act rests. It is true that the land in question could not be taxed except at its value on the taxing date. It is not now held to be taxable otherwise. The legislative power under which the present charge upon Keene is sustained is not one that can be used to vary the rights of individual taxpayers, as between themselves. It touches their rights only in a larger and general way, and as to a subject upon which a reasonable discretion has been given to the legislature.

The argument that the charge imposed is to be treated as a tax upon Keene's property in Roxbury because the act was adopted as an amendment to Public Statutes, chapter 55, relating to taxation,

has little weight. The act of 1911 contains certain provisions for exemption from taxation and others for taxation, as well as the provision under consideration. Because of this, it was properly termed an act relating to taxation, although a part of its provisions might be more properly classified under a different title, if the charge laid were sustained only upon the first ground stated herein.

Questions are also presented as to the meaning of the act of 1911. In order for property to be exempt from taxation under this statute, two requirements must be met. It must be held for the purposes of a water supply, and it must not yield rent, or revenue in the nature of rent. The argument here has been largely upon the latter proposition. It is urged in behalf of the defendant that the purchase price of timber sold to be cut, water rates collected in Keene and charges for water in Roxbury are all to be classed as revenue in the nature of rent, and that therefore all the plaintiff's property is taxable. It is a matter of common knowledge that every water company makes some kind of a charge for water furnished to consumers. If the statute were to be construed as the defendant contends, it would defeat itself. There would be no town or city that would not be excluded from its benefits. It is manifest that the legislature did not contemplate such a result, or use the language in the sense claimed.

The nature of the transaction involved in supplying water negatives any idea of the relation of landlord and tenant, or the payment by one for the temporary use of property, the general title to which remained in the other. The water is sold, not rented. The claim that the purchase price of the timber sold is revenue in the nature of rent, stands no better. The payment was not for the use of property, but for a transfer of the general title thereto.

But while none of this property is taxable because rented, a portion of it is within the exceptions in the statute, because it has not been held for the purposes of a water supply. The land was held for that purpose, but the timber thereon was held for its value to grow and sell. The situation is much like that in *Young Men's Christian Association* v. *Keene*, 70 N. H. 223. In that case the association's building was exempted "to the extent that it is used for the purposes of the association." Laws 1893, c. 259. Two stores in the building were rented, and it was held that a tax was legally laid upon that much of the property.

So here, the growing of timber, or retaining it upon the land, has no part in promoting the water works enterprise. The timber

is grown because Keene elects to put its land held for water works purposes to other and profitable use. And as such use produces tangible property, not used for the water works, it follows that such property is not within the exemption provided by the statute. The same reasoning applies to purchases of property covered with a stand of matured timber. The city may be obliged to buy the timber, in order to get the land; but the timber is not held for the specified use.

The purpose the legislature had in mind was to exempt everything used for the water works, and leave the rest of the holdings subject to taxation. There is no substantial reason why the city should be enabled to engage in the enterprise of growing timber under a tax exemption not applying to private parties. There is nothing in the statute to warrant the conclusion that the legislature intended any such discrimination.

There may be situations where the growth upon the land is promoted or retained to conserve the water supply. When this situation exists the growth is exempt, because it is held for the specified purpose. In the present case, it is evident that the large tract of timber sold in 1922 cannot be treated as theretofore exempt on this ground. Whether any of the other growth still owned by the city is so held, is a question of fact, to be settled in the superior court.

The question whether the charges imposed under the act are properly levied and collected in the same manner as taxes has not been raised by the parties, and does not appear to be material to the merits of the present controversy. Although, the payments were not taxes, and technically could not be so treated, yet justice does not require that they be abated and the defendant put to the trouble and expense of collecting them again in some other proceeding. The plaintiff does not seek any abatement on this ground. It concedes its liability to pay according to the terms of the statute, and makes no question as to the method employed in fixing the amount.

It was suggested in argument that this statute affords no authority for taxing the land owned by Keene and not held for the specified purpose. This is true, but it does not aid the plaintiff. Such land is taxable under other statutory provisions. *Whitefield* v. *Dalton*, 80 N. H. 93. The mere fact of municipal ownership does not exempt land in another town from taxation. Unless it is held for a public use, it is taxable. The question presented in *Newport* v. *Unity*, 68 N. H. 587, does not arise here.

The value of the growth within the watershed, and not held for water works purposes, should be added to the amount for which the plaintiff was found taxable. The amount upon which it is chargeable under the act of 1911 should be reduced by the amount of the value of the growth, which entered into the original computation of that amount, so far as such growth shall be found to be taxable. The amounts of overpayments found in conformity with these views will be the principal sums for which abatements should be ordered.

*Case discharged.*

All concurred.