Cheshire,
No. 5218.

G<small>ILSUM</small>

<em>v.</em>

M<small>ONADNOCK</small> R<small>EGIONAL</small> S<small>CHOOL</small> D<small>ISTRICT</small>.

Argued April 8, 1964.
Decided April 30, 1964.

*Goodnow, Arwe & Ayer* (*Mr. John R. Goodnow* orally), for the plaintiff.

*Homer S. Bradley* (by brief and orally), for the Monadnock regional school district.

*Bell & Bell*, for the town of Fitzwilliam, (by brief) amicus curiae.

*Gardner C. Turner* (by brief and orally), for the town of Sullivan, amicus curiae.

LAMPRON, J.  On February 11, 1961, the Monadnock regional school district became a legally organized cooperative school district under RSA ch. 195 effective as of July 1, 1962.  Laws 1961, *c.* 333.  It then comprised five former school districts in Cheshire county.  Thereafter three more districts were added by annexation (RSA 195:16) so that on the effective date of July 1, 1962, Monadnock consisted of the following eight former school districts:  Fitzwilliam, Richmond, Roxbury, Swanzey, Troy, Gilsum, Surry and Sullivan.

The members agreed to prorate the cost of operation of the regional school among the pre-existing school districts in accordance with the provisions of RSA 195:7 II.  This provides that one-half of the cost is to be apportioned in proportion to the average daily membership for the preceding school year, in the case of Gilsum 3.23 per cent.  The other half is to be apportioned in the proportion that the adjusted valuation of the pre-existing district bears to the total adjusted valuation of the property within the cooperative district, for Gilsum 7.68 per cent.  The resulting over-all percentage of the cost of operation to be borne by Gilsum was 5.45.

The parties agree that in the years prior to 1962, while it was a separate school district, Gilsum qualified for State foundation aid as a "needy local school district" under RSA 198:8, 9, 10 (supp).  See Report of Interim Commission on Education (1963) *p.* 21.  In 1961, foundation aid of $24,255.48 was paid to the Gilsum school district under the provisions of RSA 198:10-b (supp).

RSA 195:15 (supp) provides that "the state aid, provided by RSA 198:8, 9 and 10, to which a cooperative elementary and/or secondary district shall be entitled shall be the total of those shares of the aid to which pupils attending the cooperative district would have entitled the pre-existing districts, had they remained in the pre-existing districts."  For the year commencing July 1, 1962, the share of foundation aid to which the pre-existing Gilsum district would have been entitled on account of the

pupils attending Monadnock was fixed at $22,981.48. This amount together with the foundation aid which other pre-existing districts now part of Monadnock would have been similarly entitled totaled $110,352.59 and was paid directly to Monadnock by the State.

In computing the respective shares of the cost of operation for 1962-1963, to be carried by each pre-existing district, Monadnock subtracted the $110,352.59 of foundation aid from the total required appropriation in arriving at the net amount of assessment to be prorated among the member districts. This resulted in Gilsum receiving credit for 5.45 per cent only of the total amount of foundation aid received by Monadnock, namely, $6,014.18, instead of $22,981.48 to which the pre-existing Gilsum district would have been entitled had it continued as a school district and the basis on which that amount was paid to Monadnock in foundation aid. Under this method Fitzwilliam received the benefit of $16,806.70 in foundation aid where, as a pre-existing separate school district, it would not have been entitled to nor received any such aid.

It is the position of Gilsum, supported by Sullivan and opposed by Fitzwilliam, that the sum of $110,352.59 received by Monadnock in foundation aid should not be deducted from the total appropriation required to meet the cost of operation of the cooperative school in arriving at the proportionate share to be raised by taxation by each of the towns in the pre-existing districts. They maintain that each share should be determined independently of the foundation aid received by Monadnock. After this has been done the full amount of the foundation aid which the pupils attending Monadnock from a certain pre-existing district would have entitled that district to receive should be credited against its share of the cost previously determined in the above manner.

If this method was followed, Gilsum's 5.45 per cent of the total cost for 1962-1963 would be $51,065.51. The amount of $22,981.48 in foundation aid to which it would have been entitled as a pre-existing district would be subtracted from this total leaving $29,999.35 to be raised by taxation. Under the allocation made by Monadnock, Gilsum is credited with only $6,014.18 of foundation aid (5.45% of $110,352.59) and must raise $46,966.65 by taxation.

We hold that the method advanced by Gilsum and supported

by Sullivan of arriving at the share of the cost of operating the regional cooperative school to be raised by taxation in each of the towns which contained the pre-existing school districts is in consonance with the legislative intent manifested in the state aid (RSA 198:8, 9, 10, 10-b (supp)) and the cooperative school districts (RSA 195:15 (supp)) statutes and must be followed.

The present system of sharing the costs of public education with local school districts in the form of state aid was first undertaken in 1919. Laws 1919, c. 106, s. 22; Report of New Hampshire Conference on Education (1955) p. 6. Since that time most of the aid provided by the State, except for general aid (Laws 1947, 198:2, par. 9), school building aid (RSA 198:15-a (supp)), and cooperative school district aid (RSA 198:18 (supp)) has been in the form of equalization (Laws 1947, 198:2, par. 9) and now foundation aid (Laws 1951, 148: 1, par. 9). The Legislature has declared the purpose of foundation aid to be "to aid needy local school districts in meeting the costs of providing public elementary and high school education" (RSA 198:9 (supp)) and "to more nearly provide equal public school educational opportunity throughout the state." RSA 198:10 (supp). "The basic intent is to make the poorer districts financially able to spend the state average in current expenses per pupil." Report of Interim Commission on Education (1963) p. 55.

The method used is to supplement by state aid ("foundation aid") the inadequacy of the money which a particular school district can raise at a fixed rate on its taxable property ("local effort") to meet the set costs of the required programs of public elementary and high school education. RSA 198:10-a (supp). The funds raised as the "local effort" result from an assessment by the selectmen of the town upon its ratable estate. RSA 198:5; RSA 194:7.

The history of the legislation granting foundation aid shows an unvarying purpose to help the needy school districts. The eligibility for this aid has at all times been bottomed on the failure of the equalized valuation of the town which composed the school district to provide a sufficient tax base to produce the funds necessary to meet the costs of certain required programs of public education. Report Interim Commission on Education (1963) p. 21, par. 9, 10 and p. 55.

RSA 195:15 (supp) provides that the foundation aid which a

cooperative district "shall be entitled shall be the total of those shares of the aid to which the pupils attending the cooperative district would have entitled the pre-existing districts, had they remained in the pre-existing districts." This language indicates a legislative intent to carry over to payments to cooperative districts the same purpose of supplementing the inadequacy of the taxable property of a town to support required education programs.

In other words by carrying over to state aid to cooperative districts (RSA 195:15 (supp)) the formula used for foundation aid to needy school districts (RSA 198:8, 9, 10) and by specific reference (Laws 1955, 334:13) the Legislature manifested an intent that a town which is a part of a cooperative school district should benefit from foundation aid to the same extent that its pre-existing school district would have benefited if it still existed. In order to accomplish this purpose the foundation aid paid to the cooperative district because of and measured by the needs of a pre-existing school district must be credited to the town which constituted it. Only in this manner will this town receive the full assistance the Legislature intended to grant to it because of the insufficiency of its taxable property to meet the costs of required programs of education. We find nothing in these statutes manifesting a legislative intent to provide foundation aid to a cooperative district as such or to all towns therein regardless of their financial needs which is the effect of the apportionment of costs adopted by Monadnock.

The 1963 session of the Legislature enacted a program of cooperative school district aid effective July 1, 1964 (RSA 198: 18 (supp)) based on incentive rather than need. There is no indication that this law was to affect foundation aid in any manner.

House Bill 393 would have amended RSA 195:15 (supp) pertaining to foundation aid by providing "The state aid so earned on account of each pre-existing district shall be credited to each such pre-existing district in the determination of its tax assessment under section 14." This bill was in the House Committee on Education when the session adjourned. No definite conclusions can be drawn from the fact the bill was not reported out of committee.

By Laws 1963, c. 198, *p*. 253 and c. 199, *p*. 346, the Legislature granted special aid to the twenty school districts having

the lowest equalized valuation per pupil. Gilsum received $16,037 thereunder but no other town in the Monadnock regional school district received any of this aid although six of them were entitled to foundation aid as "pre-existing school districts." It is difficult to ascribe any significant influence to one over the other.

RSA 195:18 III h (supp), also enacted in 1963, c. 258, provides that cooperative school districts organized after June 30, 1963, can provide in their planning for "the manner in which the state aid referred to in section 15, or any other available state aid, shall be allocated, unless it is otherwise expressly provided by the law making such aid available." This does not create an inference that such authority existed in the cooperative districts already in existence such as Monadnock.

We find nothing in any of the actions taken by the Legislature in 1963 which militates against our holding that to accomplish the intended purpose of foundation aid the cooperative district must give full credit to a component town for the amount of foundation aid received because of the needs of this town as a pre-existing school district.

*Remanded.*

All concurred.