Hillsborough-southern judicial district
No. 2000-435

GORDON ALLEN & a.

v.

THE STATE OF NEW HAMPSHIRE

November 26, 2001

*Nelson, Kinder, Mosseau & Saturley, P.C.*, of Manchester (*William C. Saturley* on the brief and orally), for the petitioners.

*Philip T. McLaughlin*, attorney general (*Anne M. Edwards*, special senior assistant attorney general, on the brief and orally), and *Rath, Young and Pignatelli, P.A.*, of Concord (*Martin P. Honigberg* on the brief), for the State.

*Upton, Sanders & Smith, LLP*, of Concord (*John F. Teague* on the brief), for the Towns of New London and Newbury, as *amici curiae*.

DALIANIS, J. This is an interlocutory transfer without ruling from the Superior Court (*Hampsey*, J.), *see* SUP. CT. R. 9, asking whether, for the purposes of Part I, Articles 1, 2 and 12 and Part II, Article 5 of the New

Hampshire Constitution, cooperative school districts are the appropriate taxing districts for taxes assessed to pay for educational services beyond those paid for with State funds. We answer the question in the negative. The parties have also transferred a question concerning the petitioners' right to attorney's fees. In light of our ruling, this question is moot.

"We accept the statement of the case presented in the interlocutory transfer." *Trovato v. DeVeau*, 143 N.H. 523, 524 (1999). The formation and operation of cooperative school districts are governed generally by RSA chapter 195. Every cooperative school district has one or more formulas by which the district apportions its costs among the pre-existing school districts (*i.e.*, towns). By statute, these formulas are determined by the voters in the towns that comprise the cooperative school district. *See* RSA 195:7, :8 (1999) (applying to cooperative school districts organized before July 1, 1963); RSA 195:18, III(e), (g), :18, VI-VIII (Supp. 2000) (applying to cooperative school districts organized under RSA 195:18). Most cooperative school districts use formulas that rely upon a combination of equalized property valuation and average daily student membership in the constituent towns. For instance, in the Contoocook Valley (Con-Val) Cooperative School District, half of the district's costs are apportioned on the basis of equalized property valuation in each town and half are apportioned on the basis of average daily student membership in each town. As a result of formulas that use factors other than the value of real property, local education tax rates may vary among the towns within a cooperative school district. Property of identical value in adjacent towns within a cooperative school district may be taxed at different rates, depending upon the workings of the formula.

Each of the petitioners resides in one of the towns that make up either the Con-Val Cooperative School District or the Mascenic Cooperative School District. They initiated this action in 1996, alleging that the differing tax rates within the Con-Val and Mascenic cooperative school districts violated the "proportional and reasonable" requirement of Part II, Article 5 and the equal protection provisions of Part I, Articles 1, 2 and 12 of the New Hampshire Constitution. The State moved to dismiss the action, which the court granted. The trial court framed "the decisive issue" as "whether the individual towns or the cooperative school district is the taxing class or district." In ruling for the State, the court determined that the individual towns were the taxing districts and held that tax rates could vary from town to town within a cooperative without implicating the New Hampshire Constitution. For the purposes of this interlocutory transfer, we treat this ruling as a nullity.

The petitioners appealed, and while their appeal was pending, we decided *Claremont School District v. Governor*, 142 N.H. 462 (1997)

(*Claremont II*). In *Claremont II*, we held that "the present system of financing ... public education in New Hampshire is unconstitutional." *Id.* at 465. We then remanded the petitioners' case to the superior court for proceedings consistent with *Claremont II*.

In June 1998, the superior court ruled that *Claremont II* required a finding that the statutory scheme at issue was unconstitutional. The trial court reasoned that the scheme was unconstitutional because it was part of the education funding scheme we held unconstitutional in *Claremont II*. In May 2000, the superior court ordered the parties to frame the outstanding issues in the case and to submit a proposed order to transfer these issues without ruling to this court. This interlocutory transfer followed.

Part II, Article 5 of the New Hampshire Constitution requires that "all taxes be proportionate and reasonable — that is, equal in valuation and uniform in rate." *Id.* at 468 (quotation omitted). "The test to determine whether a tax is equal and proportional is to inquire whether the taxpayers' property was valued at the same per cent of its true value as all the taxable property in the taxing district." *Id.* (quotation and brackets omitted). Thus, determining whether it is constitutionally permissible for tax rates to vary from town to town within a cooperative school district depends upon whether the cooperative school district or the town is the taxing district. If the town is the taxing district, then it is permissible for tax rates to vary among the towns that comprise the cooperative school district. On the other hand, if the cooperative school district is the taxing district, then the tax rates within the cooperative must be uniform. For the purposes of this interlocutory transfer, the parties agree that the taxes at issue are local, and are not State taxes. The sole issue is which local entity is the appropriate taxing district.

In *Gilsum v. Monadnock School District*, 105 N.H. 361 (1964), and *Monadnock School District v. Fitzwilliam*, 105 N.H. 487 (1964), we implied that the taxing district for Part II, Article 5 purposes is the town and not the cooperative school district. We see no reason to depart from these cases today.

At issue in *Gilsum* was the allocation of costs to operate a regional school within the Monadnock Regional School District. The Monadnock Regional School District had been subtracting from the entire district budget the amount it received in State foundation aid before allocating to each town its share of costs. *Gilsum*, 105 N.H. at 363. The towns of Gilsum and Sullivan objected to this procedure, arguing that under this approach, they received less State foundation aid than they were entitled to receive and had to raise more money through taxes than they would have had to raise had they received all of the State foundation aid to which they were entitled. *Id.* at 363-64. Gilsum and Sullivan argued that the school district

should have first determined each town's share of costs without regard to the State aid and then credited each town with the full amount of State aid to which the town was entitled. *Id.* at 363.

We agreed, observing that the legislature intended "that a town which is a part of a cooperative school district should benefit from foundation aid to the same extent that its pre-existing school district would have benefited if it still existed." *Id.* at 365. Thus, we held that the State foundation aid paid to the cooperative school district "because of and measured by the needs of a pre-existing school district," had to be credited to the town which constituted the pre-existing school district. *Id.*

In *Fitzwilliam*, 105 N.H. at 489-90, four of the towns in the Monadnock Regional School District asserted that the other towns in the district, by agreeing to the method the district used to allocate foundation aid, were estopped from arguing both that this method was contrary to the *Gilsum* decision and that the district should adopt the *Gilsum* method in the future. These four towns also claimed that their constitutional rights to proportional taxation and equal protection would be violated if the district were to adopt the *Gilsum* method. *Id.* at 494-95. In rejecting both claims, we reaffirmed the authority of the legislature to create cooperative school districts and to determine "the manner in which the costs of operation will be apportioned between the towns desiring to join such a district." *Id.* at 494.

In particular, we held that the application of the *Gilsum* method, although it would increase the amounts to be raised by the four towns to meet their share of the regional school's operating costs, did not "result[] in such an unconscionable disproportion in the burden placed on the taxpayers of the respective towns as to require relief by means of estoppel." *Id.* at 493. As we explained:

> The fact that the receipt of this aid together with the computation of the operating costs of the district school according to a formula contained in the act authorizing the creation of such a district results in one town in the district having to raise more dollars per pupil attending the cooperative school than another town in the same district does not place an unequal tax burden on any inhabitant of a particular taxing district which is the constitutional equality required. The Constitution does not guarantee that all taxing districts shall have an equal number of pupils to educate, or that the aggregate costs of education shall be identical.

*Id.* at 495-96 (citation omitted).

Both *Gilsum* and *Fitzwilliam* rest upon the premise that the town, or pre-existing school district, is the relevant taxing district for a constitutional analysis of the taxes used to support a cooperative school district. Under these decisions, differences in local education tax rates among towns in a cooperative school district do not violate Part II, Article 5 of the New Hampshire Constitution.

Our decision in *Claremont II* does not require a different result. In *Claremont II*, we reasoned that in light of the State's obligation to provide a constitutionally adequate education, the State was the relevant taxing district for taxes needed to fulfill this obligation. *Claremont II*, 142 N.H. at 469. We made clear, however, that our decision did not "prevent the legislature from authorizing local school districts to dedicate additional resources to their schools or to develop educational programs beyond those required for a constitutionally adequate public education." *Id.* at 475. Thus, while *Claremont II* applies to funds used to fulfill the State's obligation to provide a constitutionally adequate education, *Gilsum* and *Fitzwilliam* apply to funds used to provide educational services beyond those required for constitutional adequacy.

 The petitioners argue that cooperative school districts are the taxing districts because all of the school tax monies collected in the cooperative school district are used to provide educational services within the cooperative school district. We rejected a similar assertion in *Claremont II*, 142 N.H. at 468 (rejecting State's argument that school tax at issue was local because it was "spent only in the district").

 The petitioners next assert that the cooperative school district is the taxing district because taxpayers within a cooperative school district share the "common burden" of providing education within it. That the taxpayers within the towns comprising a cooperative school district share a "common burden" does not require that they be treated as one group for the purpose of an analysis under Part II, Article 5. As we explained in *Keene v. Roxbury*, 81 N.H. 332, 335-36 (1924):

> [W]hen there are overlapping, common or intermingled rights or benefits, it is within the legislative power to make a reasonable division of the burden. . . . In fixing the division of the burden between the two groups, there is no constitutional provision requiring that it shall be so established that taxpayers in both groups shall pay an equal share in proportion to their taxable estate in their group. It is not required that they be treated as one group. From the nature of the question

involved, any such limitation would often lead to an inequality greater than that sought to be rectified.

The petitioners next contend that RSA chapter 195 evinces the legislature's intent that the cooperative school districts are the taxing districts. We disagree.

"This court is the final arbiter of the intent of the legislature as expressed in the words of a statute. When construing its meaning[,] we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of Estate of Van Lunen*, 145 N.H. 82, 86 (2000) (quotation and brackets omitted).

■ Two provisions of RSA chapter 195, in particular, demonstrate that the legislature intended the towns to be the relevant taxing districts. RSA 195:14 (1999) requires the State to determine each pre-existing district's proportional share of the costs to provide educational services above those required for a constitutionally adequate education. These costs are paid for with local education taxes. The State determines each pre-existing district's proportional share by: (1) determining each pre-existing district's proportional share of the total amount to be apportioned using the cooperative school district's formula; and (2) deducting each pre-existing school district's adequate education cost from its proportional share. Thus, under RSA 195:14, the pre-existing school district (*i.e.*, town) is the relevant taxing district for local taxes used to finance educational services above those required for constitutional adequacy. RSA 195:18, IX (Supp. 2000) similarly requires the State to determine "the total amount of taxes to be raised" for a cooperative school district and "the proportional share of said taxes to be borne by each preexisting school district."

■ The petitioners argue that, under RSA chapter 195, the cooperative school district is "a new form of school government" that has all of the powers and is subject to all of the liabilities conferred upon single town school districts. *See* RSA 195:6 (1999). While this may be true, it does not mean that the pre-existing school districts cease to exist for all purposes.

The petitioners' argument, based upon evidence in *Sirrell v. State of New Hampshire*, 146 N.H. 364 (2001), lacks merit and warrants no extended discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993). As the State aptly points out, *Sirrell* has no bearing upon whether the cooperative school districts or the towns are the appropriate taxing districts for Part II, Article 5 purposes.

Because the petitioners have not developed their equal protection argument, we do not address it substantively. *See State v. Chick*, 141 N.H.

503, 504 (1996) (passing reference to constitutional claim renders argument waived); *Keenan v. Fearon,* 130 N.H. 494, 499 (1988) ("off-hand invocations" of constitutional rights supported by neither argument nor authority warrant no extended consideration).

*Remanded.*

NADEAU, J., concurred; GROFF and O'NEILL, JJ., superior court justices, specially assigned under RSA 490:3, concurred.